UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
Y.N. and Sh.N., individually and on behalf of S.N.,

                *Plaintiffs,*

-against-                                        17-cv-4356

Board of Education of the Harrison Central
School District,

                *Defendant.*

_____

# PLAINTIFFS' REPLY
# MEMORANDUM OF LAW

DATED: December 4, 2017        LAW OFFICES OF REGINA SKYER
                                                   & ASSOCIATES, LLP

                                                    Diana Gersten, Esq.
                                                    Linda A. Goldman, Esq.
                                                    276 Fifth Ave.
                                                    New York, NY 10001
                                                    (212) 532-9736
                                                    dgersten@skyerlaw.com

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT…………………………………………………   1

ARGUMENT........................................................................................................   4

    I.     THE DISTRICT DID NOT HAVE A "SHORT WINDOW
         OF TIME TO CONDUCT EVALUATIONS OR DEVELOP
         AN IEP FOR S.N. …………………………………………………..   4

    II.    THE PLAINTIFFS' CLAIMS REGARDING THE DEFICIENCIES
         IN THE IEP WERE RAISED, LITIGATED AND FULLY
         EXHAUSTED AT THE IMPARTIAL HEARING AND THIS
         COURT DOES NOT LACK SUBJECT MATTER JURISDICTION
         OVER THE ISSUES IN CONTROVERSY ………………………….   5

    III.   DEFERENCE TO THE IHO'S DETERMINATION
         IS WARRANTED ……………………………………………………   8

CONCLUSION ………………………………………………………………….   10

## TABLE OF AUTHORITIES

**Cases**

*C.F. ex rel. R.F. v. New York City Dep't of Educ.*, 746 F.3d 68 (2d Cir. 2014) ………   5-6
*D.M. v. City School District of the City of New York,* 2016 WL 319859
  (S.D.N.Y. Jan. 26, 2016) …………………………………………………………….   9-10
*Dejana Industries Inc., v. Village of Manorhaven*, 2015 WL 1275474
  (E.D.N.Y. March 18, 2015) ……………………………………………………….   1
*Little v. City of New York*, 487 F. Supp. 2d 426, 438 (S.D.N.Y. 2007) ………………   1
*L.O v. New York City Dep't of Educ.*, 822 F.3d 95 (2016) ……………………………   6
*M.H v. N.Y.C. Dep't of Educ.*, 685 F.3d 217 (2d Cir. 2012) …………………………   5, 9
*R.E. v. New York City Dep't of Educ.,* 694 F.3d 167 (2d Cir. 2012) ………………….   1, 3
*Reyes v. New York City Dep't of Educ.*, 760 F.3d 211 (2d Cir. 2014) ……………….   5
*Risco v. McHugh*, 868 F. Supp. 2d 75 (S.D.N.Y. 2012) ………………………….......   1
*R.B. v. Bd. of Educ. of City of New York*, 99 F. Supp. 2d 411 (S.D.N.Y. 2000) ………   7
*S.Y. & R.Y. v. New York City Dep't of Educ*, 210 F. Supp.3d 556
  (S.D.N.Y. 2016) ……………………………………………………..............................   6
*U.S. v. Munoz,* 1994 WL 132157 (S.D.N.Y. 2004) ………………………………….   1

**Regulations**

8 NYCRR 200.4[b][1][iv] ……………………………………………………………   9
8 NYCRR 200.4 [j][1][i] ……………………………………………………………   7

**Administrative Decisions**

*Application of a Child with a Handicapping Condition*, 27 Ed. Dep't Rep. 456 ……   7
*Application of a Student Suspected of Having A Disability*, Appeal No. 15-038 ……   7
*Application of a Student Suspected of Having a Disability,* Appeal No. 11-074 …….   7
*Application of a Child with a Disability,* Appeal No. 01-007 …………………….   7-8
*Application of a Child Suspected of Having a Handicapping Condition*,
  Appeal No. 91-20 ……………………………………………………………………   8

.

**PRELIMINARY STATEMENT**

Plaintiffs Y.N. and Sh. N., individually and on behalf of their minor child, S.N., respectfully submit this reply memorandum of law in further support of their motion for summary judgment. At issue is the propriety of a determination by a State Review Officer ("SRO") of the State Education Department, who concluded that the Defendant, the Board of Education of the Harrison Central School District ("District"), offered S.N. a free and appropriate public education ("FAPE") for the 2015-2016 school year.

For reasons stated below, this Court should disregard District counsel's affirmation in opposition to the summary judgment motion.[1] In the event this Court denies this request, there are a few salient issues that warrant a response. The defendant's affirmation refers to evaluations that were conducted after the IEP in question was developed. It is critical to the integrity of the FAPE process that the appropriateness of the IEP be determined as of the time that the parents are required to make a placement decision. The Second Circuit made this clear in the case of *R.E. v. New York City Dep't of Educ.*, 694 F.3d 167 (2012). Thus, contrary to the District's allegations in ¶ 7 of its Affirmation, the results of future evaluations (namely, the District's belated classroom observation and the psychoeducational evaluation that was corrected after the school

---

[1] Rather than encumbering the Court with additional motion papers, the Plaintiffs respectfully request that this Court disregard the "Affirmation in Opposition to the Motion for 'Summary Judgment'" submitted by Mark C. Rushfield, attorney for the District. The parties, with the Court's prior permission, had agreed to waive the Local Civil Court Rule 56.1 Statement and agreed to incorporate relevant facts within their respective Memoranda of Law to streamline and simplify the process. The "allegations" in the District counsel's affirmation are not factual in nature, but rather, constitute legal arguments designed to convince this Court to uphold the SRO's determination. District counsel's affirmation is not based on any personal knowledge of the relevant facts; he was not present at the underlying proceedings; and he offers no new evidence. Accordingly, District counsel's affirmation should be given no weight or consideration (*see Little v. City of New York*, 487 F. Supp. 2d 426, 438 (S.D.N.Y. 2007) (attorney's affirmation, which is not based on personal knowledge of the relevant facts, is to be accorded no weight); *Risco v. McHugh*, 868 F. Supp. 2d 75, fn.2 (S.D.N.Y. 2012) (in accord); *see also Dejana Industries Inc., v. Village of Manorhaven*, 2015 WL 1275474 (E.D.N.Y. March 18, 2015); *U.S. v. Munoz*, 1994 WL 132157 (S.D.N.Y. 2004 per Griesa, J.). Additionally, the affirmation submitted by District counsel consists of legal arguments that should have been included in the Memo of Law. Counsel should not be permitted to create a separate document to circumvent this Court's page limitations for written submissions.

year commenced) should not have been considered or relied upon by the District or the SRO to justify the IEP. This is a particularly important point because the testimony adduced at the Impartial Hearing reflected that belated results and evaluations did not show "higher" scores or a more "competent" student, as alleged in ¶ 6 of the Affirmation. Rather, they revealed that S.N. presented with a greater disparity in her abilities as well as more intense needs in her areas of deficit (Tr. 780-84).

Additionally, as will be discussed, *infra*, the District's counsel is incorrect when he states in his Affirmation (¶ 7) that the issues presented in this appeal are unexhausted or somehow unpreserved for review. The parents have maintained, from the outset, that the IEP was invalid and inappropriate, resulting in the denial of FAPE, due to a myriad of errors including, the District's reliance upon incorrect scores and the District's failure to conduct an observation, which would have yielded information regarding S.N.'s functionality and her present levels of performance. The parents were harmed because the District's psychological evaluation and resulting IEP were inaccurate and they could not rely upon its contents. These themes pervaded the administrative hearing, were exhaustively litigated by both sides and were explicitly addressed by the IHO.

Another fallacious argument presented in District counsel's Affirmation lies in his attempt to recreate what the CSE relied on in developing S.N.'s August IEP. The testimony in the record reflects that the members of the IEP team relied on the District's incorrect psychological report (Tr. 64-65, 77-78, 108, 190, 265, 275, 331, 594) and that they were surprised to learn that it was inaccurate (Tr. 591-592). No amount of post-hoc rationalizations by the District, or by the SRO, can alter the fact that the IEP was predicated upon erroneous scores. Moreover, it is important to reiterate that neither the Plaintiffs nor the District knew what the

impact of those errors were until **after** the Plaintiffs had to make their placement decision. Thus, under *R.E.*, a finding that a FAPE was denied is legally warranted because the parents were not provided with a valid and accurate IEP at the time of the commencement of the 2015-2016 school year. The only correct, most recent, psychoeducational evaluation in the parties' possession was Dr. Tagliareni's report, which recommended a small, specialized educational setting and this was the document upon which the parents justifiably relied in making their placement decision.

District counsel's Affirmation is also problematic to the extent that it so heavily relies on Windward progress reports.[2] These reports described S.N.'s progress in a specialized, intensive, immersive educational setting. They did not, in any way, shape or form, prognosticate S.N.'s ability to perform or function in a general education classroom. In fact, Windward School personnel did not believe S.N. could make progress in the general education setting proposed by the District. That is precisely why the CSE, in November, offered S.N. a more restrictive placement than it initially proposed.

The burden should never have been placed on the Plaintiffs to establish that S.N. could not make progress in the District's general education program. As the IHO correctly recognized, the onus was on the District to demonstrate that S.N. could make progress, appropriate to her circumstances, in a large general education, mainstream classroom. Windward's report card, which was the only evidence submitted by the District to attempt to show S.N.'s present functional performance in a classroom, did not satisfy this burden because such reports **only** reflected S.N.'s performance in a specialized setting. Thus, the SRO erred in her determination regarding Prong I and deference should be given to the better-reasoned decision of the IHO.

---

[2] The District previously described these reports as "vague and unreliable," a fact that did not go unnoticed by the SRO (SRO Dec. p. 8)

**ARGUMENT**
I. **THE DISTRICT DID NOT HAVE A "SHORT WINDOW" OF TIME TO CONDUCT EVALUATIONS OR DEVELOP AN IEP FOR S.N.**

The District's contention that it had minimal time within which to evaluate S.N. had been disposed of by the IHO and the SRO, both of whom ruled in favor of the parents with respect to this issue (IHO Dec.21; SRO Dec. 11). Each administrative officer found that the stipulation entered into between the parties in connection with a prior school year did not justify any delay in evaluating and developing a valid IEP for S.N. for the 2015-2016 school year. The District, nevertheless, seems intent on resurrecting the specious argument that it only had a "short window of time" to meet its FAPE obligation (Def. Memo of Law pp. 3, 4, 6, 7). In fact, the District was the subject of an interim order in March of 2015, which recognized that "the family had informed the District on several occasions that they wished to seek an evaluation and placement from the District" (Ex. K-1) and that registration forms were not a prerequisite to triggering FAPE obligations where the child undisputedly resides in the District (Ex. K-3). Thus, there is no question that the District's decision to wait to evaluate S.N., until after a stipulation was executed for an entirely different year, was unjustified and resulted in rushed evaluations; erroneous scoring; the failure to procure the presence of Windward staff at the August IEP meeting; and the failure to conduct a classroom observation, which would have generated essential and legally required information regarding S.N.'s functionality in the classroom as well as her present levels of performance.[3]

---

[3] The District's reliance upon S.N.'s report cards from Solomon Schechter is miscast because these documents did not reflect her **present** levels of performance or present ability to function in a classroom. Indeed, even the District's own witness, Julie Snider, testified that the IESP provided when S.N. was at Solomon Schechter was "outdated" (Tr. 91-92). Ms. Snider additionally testified that the CSE did not review the Solomon Schechter classroom observation at the August IEP meeting (Tr. 176). Thus, the District's argument that Solomon Schechter and Windward report cards support a finding that S.N. had the ability to meet grade-level academic expectations even in an environment in which she was "receiving no special education supports" (Def.'s Memo of Law p. 9), is untrue and is completely belied by the record. The Windward School is a specialized educational setting and S.N. has received consistent, daily, immersive special education support at this school. The Solomon Schechter School, in its reports,

Additionally, the District's excuse that it only had a "short window of time" to evaluate S.N. cannot, and does not, obviate the legal error resulting from its attempt to cure the deficiencies in the August IEP by creating a new IEP in November. Indeed, the District raises no cogent arguments challenging the Plaintiff's legal assertion that an IEP cannot be amended after the fact to cure the deficiencies inherent in the original document. *See Reyes ex rel. R.P. v. N.Y. City Dep't of Educ.,* 760 F.3d 211, 220–21 (2d Cir. 2014). This is a purely legal question that does not implicate any specialized knowledge or deference standards because the SRO, as caselaw has repeatedly recognized, has no greater expertise when it comes to a purely legal issue such as the one identified in the present case. *See generally M.H. v. New York City Dep't of Educ.*, 685 F. 3d 217 (2d Cir. 2012). The District's violation of S.N.'s rights, in failing to fully and accurately evaluate her, were not only procedural, but were substantive as well, because the absence of the necessary array of evaluations and the reliance upon incorrect scores resulted in a deficient program recommendation and deprived S.N. of important educational benefits, as the parents explicitly alleged in their Impartial Hearing Request (Ex. 1).

II. **THE PLAINTIFFS' CLAIMS REGARDING THE DEFICIENCIES IN THE IEP WERE RAISED, LITIGATED AND FULLY EXHAUSTED AT THE IMPARTIAL HEARING AND THIS COURT DOES NOT LACK SUBJECT MATTER JURISDICTION OVER THE ISSUES IN CONTROVERSY**

At issue in this summary judgment motion are claims regarding errors and omissions in the IEP process resulting in a substantively deficient document. The parents are not raising any new claims and the District is not being "sandbagged" by any questions of fact or law that were not exhaustively litigated before the IHO (*see C.F. ex. rel v. New York City Dep't of Educ.*, 746

---

recommended that S.N. receive "continued support and intervention" (Ex. 17-00123). Thus, the evidence does not support the District's contention that it sustained its Prong I burden of justifying a general education program for S.N. based on these documents.

F.3d 68 (2d Cir. 2014). The record does not support the District's contention that S.N.'s disability was only mild and that a general education program, with minimal support, was sufficient to address her needs. Even the District was forced to acknowledge this fact when it reconvened in November, with more complete and accurate information, and proposed a more supportive program for S.N.

The District asserts that Plaintiffs should be precluded from alleging that Dr. Tagliareni's report was not fairly considered by the CSE team. The CSE's rejection of the substance of Dr. Tagliareni's evaluation, in favor of a psychological report that contained incorrect data, was exhaustively litigated before the IHO. The District relied on incorrect scores, which resulted in the creation of an inaccurate and, therefore, invalid IEP. The SRO's post-hoc rationalizations regarding what the CSE could have considered to justify its findings[4] cannot alter the fact that the parents were given a defective and inaccurate document upon which they could not rely in making a placement decision. Given the fact that Dr. Tagliareni's evaluation contained the most current, valid testing scores, the rejection of her conclusions and the endorsement of those contained in an invalid report, was legally objectionable and operated to deprive S.N. of a substantively appropriate program designed to address her documented needs.

The District also challenges parental claims directed at the CSE's failure to ascertain S.N.'s present levels of performance. This challenge has no merit because information regarding S.N.'s functionality in the classroom and her performance abilities are inextricably related to the District's failure to conduct a classroom observation and to speak with S.N.'s teachers prior to

---

[4] Courts have recognized that it is inappropriate for reviewing authorities to speculate how the CSE reached (or could have reached) the terms of a child's IEP and that a reviewing authority, like the SRO, should not have unfettered discretion to "comb through evaluative materials" generated at the time the IEP was formulated, to match terms of the IEP to any assertion contained in any existing document, irrespective of whether it was actually viewed and considered by the CSE" See *L.O v. New York City Dep't of Educ.*, 822 F.3d 95 (2016); *S.Y. & R.Y. v. New York City Dep't of Educ.*, 210 F. Supp.3d 556 (S.D.N.Y. 2016).

developing the August IEP, issues that were fully litigated below. Indeed, even the SRO noted that the District's failure to procure the presence of Windward staff at the August IEP meeting (to learn about how she functions in a classroom setting) can "reasonably be seen to have been the proper focus at the impartial hearing" (SRO Dec. 11). Thus, the District's arguments regarding a "failure to exhaust" and its claim regarding the purported absence of subject matter jurisdiction are devoid of merit.[5]

To the extent that the District attempts to minimize the prejudicial impact that the absence of information regarding S.N.'s present functionality had upon the substantive terms of the IEP, it should be emphasized that an observation is deemed a necessary evaluation for a student who has been classified with a learning disability (*see* 8 NYCRR 200.4 [j][1][i]) to ascertain how the student responds in a classroom or other structured setting (*see Application of a Student Suspected of Having a Disability,* Appeal No. 11-074). Eligibility determinations for a student suspected of having a learning disability are derived from a variety of sources, including an observation and teacher input (*see Application of a Student Suspected of Having a Disability,* SRO Appeal No. 15-038). Present levels of performance are relevant because they reveal how a student's disability impacts upon involvement and progress in the classroom. *See Application of a Child with a Handicapping Condition*, 27 Ed. Dep't Rep. 456; *Application of a Child with a*

---

[5] A review of the IHO's decision reveals that she specifically addressed the District's dereliction of its duty to ascertain S.N.'s functional performance in the classroom, concluding that the District waited too long to begin evaluations and speak with Windward staff (IHO Dec. 21). The parents were not required to cross-appeal this favorable ruling from the IHO because they were not aggrieved by her decision and were the prevailing parties at this stage of the proceedings (*see* e.g., *R.B. v. Bd. of Educ. of City of New York*, 99 F. Supp. 2d 411 (S.D.N.Y. 2000). The District, as early as its answer to the parents' Impartial Hearing Request, addressed the need for input from Windward staff (Ex. 2-0009) and the District certainly opened the door to testimony about Windward's assessment of S.N.'s present levels of performance throughout its case in chief *(see e.g.*, "[i]n light of the feedback from her present levels of performance, we were able to reach consensus and give more support [in November]" (Tr. 115). Accordingly, the record belies the District's claim that the issues in this case were not exhausted or that this Court is divested of subject matter jurisdiction.

*Disability,* Appeal No. 01-007; *Application of a Child Suspected of Having a Handicapping Condition*, Appeal No. 91-20). The absence of an observation and the absence of teacher input were critical deficiencies in this case because the District over-estimated S.N.'s functional abilities and classroom needs. Even the District ultimately recognized this fact to be true, as evidenced by its decision to change its program recommendation after obtaining essential information in November regarding S.N.'s functional difficulties.

The lack of information during the August IEP meeting regarding how S.N. functions in a classroom was always a pivotal point in this litigation. Deference should be given to the IHO's well-reasoned conclusion that the absence of information regarding S.N.'s functionality as well as the lack of discussion regarding whether "modifications and accommodations would be sufficient for S.N. in a general education setting;" whether S.N. was "ready to transition into a large school setting with large classrooms;" how S.N. "would perform in a mainstream class" and "how a mainstream setting would effect [sic] her confidence or level of anxiety" (IHO Dec. 20) resulted in an IEP that "failed to address S.N.'s individual needs" and therefore, denied her a FAPE because of the substantive impact that these procedural violations had (IHO Dec. 21).

### III.    DEFERENCE TO THE IHO'S DETERMINATION IS WARRANTED

As indicated, the errors alleged in this matter were both procedural and substantive because they led to a substantively deficient IEP and program recommendation, which had to be amended to a more restrictive setting once the necessary information about S.N.'s functionality in the classroom was properly obtained. Moreover, the conclusion rendered by the SRO, namely, that the parents had not alleged "any specific harm caused by the inaccurate scoring" is completely at odds with the position that the parents have taken since the inception of this case.

Notwithstanding the District's contention that the CSE has the discretion to determine the kind of evaluative information that is necessary to create a student's IEP (Def.'s Memo of Law p. 18), that discretion is not unbridled and a CSE is clearly subject to explicit legal requirements regarding the type of data it needs to consider (*see e.g.,* 8 NYCRR 200.4[b][1][iv]). Even the SRO determined that the District committed a procedural violation in this case by failing to conduct an observation (SRO Dec. 17). Where the SRO fell short was in rejecting, without good reason, the IHO's sound and substantiated conclusion that the procedural failures and legal errors resulted in a substantively [6] deficient IEP and program recommendation because there was no cogent proof by the District that S.N. could make progress, appropriate to her circumstances, in a large general education classroom (*see M.H.*, 685 F.3d at 246) (deference to IHO decision is warranted where SRO rejects a thoroughly and carefully considered decision of the IHO and SRO's findings are unpersuasive even after appropriate deference is paid).

The testimony of members of the IEP team, upon whom the District heavily relies to support its position, was largely conjectural because these witnesses barely knew S.N. and had no way of knowing how she functioned in a classroom. Indeed, the District Representative, Julie Snider, never even met S.N. (Tr. 60). The basis of knowledge of the CSE's remaining witnesses was limited to a rushed one-to-one clinical testing setting in which the scores, for arguably the most important assessment, were not even correct. There was simply no cogent or convincing proof by the District that S.N. could make progress, and not regress, if transferred from a small, highly supportive special education school to a large mainstream setting (*see D.M. v. City School*

---

[6] The conclusion that knowledge of S.N.'s functional performance, based on input from Windward staff, was as "substantive" as it was "procedural" is directly supported by the testimony of the District's own witness, Julie Snider, who stated that the increase in services to S.N. in November and the recommendation for a more restrictive program for her was due to information from Windward staff, which triggered a "significant and **substantive** discussion about what would be appropriate to meet [S.N.'s] needs…" (Tr. 194); (emphasis added).

*District of the City of New York*, 2016 WL 319859 (S.D.N.Y. Jan. 26, 2016). [7] Accordingly, deference to the careful, considered and more logical decision of the IHO is warranted.

## CONCLUSION

WHEREFORE, Plaintiffs respectfully request that this Court grant their Motion for Summary Judgment, reverse the SRO's decision as erroneous, reinstate the decision of the IHO and award the Plaintiff tuition reimbursement as well as all other and further relief which this Court deems just and proper.

Dated:   December 4, 2017
    New York, New York

Respectfully Submitted,

*Diana Gersten*

Diana Gersten, Esq.
Linda A. Goldman, Esq.
LAW OFFICES OF REGINA SKYER
& ASSOCIATES, L.L.P.
276 5th Avenue
New York, New York 10001
(212) 532-9736
dgersten@skyerlaw.com

---

[7] In its Memo of Law at pp. 20-21, the District references decisions regarding deference to a CSE's choice of educational methodology. The present case does not involve any dispute concerning an appropriate educational methodology for S.N., therefore the cases cited by the District are inapposite.